IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN CHRISTENSEN, VICTORIA STILZ, WILLIAM EHLERS, CHEYENNE HAUSER, ANGELIKA KNOEBL, NATASHA HEIDLAGE, CASSIDY DEELY and GLENN LEE, <br><br> Plaintiffs, <br><br> v. <br><br> THE BOEING COMPANY <br><br> Defendant. | Case No. 20 C 1813 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Susan Christensen, Victoria Stilz, William Ehlers, Cheyenne Hauser, Angelika Knoebl, Natasha Heidlage, Cassidy Deely, and Glenn Lee, on behalf of themselves and all others similarly situated, have brought a six count putative class action complaint against defendant The Boeing Company, alleging fraud by non-disclosure, negligence, tortious interference with contractual rights and relationship, tortious interference with an existing business relationship, fraudulent misrepresentation, and negligent misrepresentation, in Counts I-VI respectively. Defendant moved to dismiss all counts under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b). In response, plaintiffs have withdrawn their claims for tortious interference with contract (Count III) and tortious interference with existing business relationship (Count IV). For the reasons that follow, defendant's motion is granted as to the remaining counts.

## BACKGROUND

Plaintiffs are Southwest Airlines flight attendants. They seek lost wages and other damages that they and approximately 17,000 other Southwest flight attendants allegedly suffered

as a result of the grounding in 2019 of defendant's 737 Max aircraft. Plaintiffs allege that defendant made material misrepresentations to regulators, defendant's customers, including Southwest Airlines, and the public to circumvent the appropriate regulatory process and rush the aircraft into production and service. The 72 page, 380 paragraph complaint is long on the details of defendant's problems with the aircraft since it first announced its launch in 2011, Southwest Airlines' order for 150 Max aircraft in late 2011, and defendant's alleged efforts to hide the problems from the public. The complaint is short, however, on how defendant's efforts to hide the problems affected the individual plaintiffs.

## DISCUSSION

Defendant has moved to dismiss the complaint for failure to state a claim. To survive such a motion, the complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, because counts I and IV sound in fraud, they are also subject to the heightened requirements of Fed. R. Civ. P. 9(b), which provides that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The complaint must provide "the who, what, when, where, and how" of the alleged fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

Defendant first attacks plaintiffs' entire complaint for failing to allege proximate causation sufficiently. Under Illinois law, which the parties agree applies, proximate cause is an

2

element of every tort. To plead proximate causation, the complaint must allege facts that if true would establish both "cause-in-fact" and "legal cause." Phillips v. DePaul Univ., 19 N.E.3d 1019, 1032-33 (1st Dist. 2014). In the context of fraud, cause-in-fact is "but for" cause, meaning the relevant inquiry is whether the alleged harm would have occurred absent the defendant's conduct. Id. at 1033. "Legal cause requires that the alleged injury be a foreseeable consequence of the alleged misrepresentation." Id. Legal cause requires that the defendant's conduct be "so closely tied to the plaintiff's injury that he should be held legally responsible for it." City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 395 (2004). "The question is one of policy-How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?" Id.

     The instant complaint fails as to both requirements. First, the complaint fails to allege how defendant's alleged misrepresentations injured any of the named plaintiffs in any way. As noted above, the complaint sets out in agonizing detail the specifics of defendant's problems with the design of the aircraft and the alleged attempts to hide those problems. Noticeably lacking, however, is any allegation of injury to any named plaintiff. Indeed, after paragraphs 17-24 identify the named plaintiffs as Southwest Airlines Flight Attendants, no named plaintiff is ever mentioned again. The lone allegation of damage is contained in paragraph 224, which alleges that after the 737 Max was grounded Southwest had to cancel 330 flights per day. There are no allegations that any of the named plaintiffs were schedule to work those flights and thus lost income because they get paid per flight. Nor are there any allegations to connect any alleged injury to defendant's alleged misrepresentations. As defendant argues, plaintiffs' claims rest on the allegation that as a group the Southwest Airlines Flight Attendants relied on certain

misstatements made in 2012 1nd 2013 when, in June 2013 their union entered into a new Collective Bargaining Agreement ("CBA") with the airline in which the flight attendants agreed to "fly on and staff" the new aircraft. As the complaint makes clear, however, the negotiations and agreement occurred well before defendant had even achieved a firm design configuration and more than a year before defendant began ground testing of the engine. Nothing in the complaint suggests that the alleged misrepresentations made in 2012 or 2013, caused any damage to any named plaintiff or the flight attendants as a group. And, to the extent that the claims rely on the CBA, they cannot be based on alleged misrepresentations made after the agreement was entered. See Phillips, 19 N.E.3d at 1036.[1]

Plaintiffs have also failed to adequately allege legal causation, as their alleged injuries (lost compensation) are far too remote from defendant's alleged misconduct. Plaintiffs do not, of course, allege any connection to the two air crashes of the 737 MAX. Instead, their claims are of the nature of a third party "who suffers no physical damage to person or property, but who claims harm as a result of injury to the person or property of another." Dundee Cement Co v. Chemical Labs, Inc., 712 F.2d 1166, 1168 (7th Cir. 1983). As such, plaintiffs' alleged injuries (to the extent they have pled any) are not a direct result of defendant's alleged misconduct, but an indirect result of defendant's inability to supply Southwest Airlines with functioning aircraft. Such indirect claims are barred under Illinois law. Id. As defendant argues, allowing plaintiffs to recover lost income from the grounding of an airplane their union agreed to fly would open defendant to liability for any loss occasioned by the grounding. For example, the ground crew

---

1 To the extent that plaintiffs allege that the union would not have agreed to the term of the CBA absent the alleged misrepresentations, the court notes that the union is not a party to the case, and even plaintiffs agree that any such claim by the union would likely be preempted by the Railway Labor Act, 45 U.S.C. § 151 et. seq.

that service the planes would suffer the same kind of remote injury, as would any Southwest supplier or member of the public whose flight was cancelled. Plaintiffs' theory would "extend potential liability to a class virtually as large as the public." Roman v. Delta Airlines, Inc., 441 F. Supp 1160, 1168 (N.D. Ill. 1977). Consequently, the court concludes that plaintiffs have failed to allege proximate cause.

There are, as well, other problems with the complaint. Count I attempts to allege a claim for fraud by non-disclosure. To sate such a claim, plaintiffs must allege: 1) a false statement or omission of a material fact: 2) known or believed to be false by the defendant; 3) with the intent to induce the plaintiff to act; 4) action by the plaintiff in reliance on the statement's truth; and 5) damages resulting from the reliance. Toulon v, Cont'l Cas. Co., 877 F.3d 725, 734 (7th Cir 2107). Nothing in the complaint plausibly suggests, however, that any of defendant's alleged misstatements or omissions were made with the intent to induce plaintiffs to do anything. Indeed, plaintiffs fail to allege that any of the named plaintiffs ever heard or were aware of any of defendant's alleged statements, or that any named plaintiff took any action in reliance on any such statement. Nor is there any allegation to plausibly suggest that defendant had any intent to induce the union to enter the CBA with Southwest. There is no allegation to even remotely suggest why defendant had any interest in Southwest Airlines agreement with its flight attendants. What the complaint does allege is that defendant made the representations and omissions for the purpose of getting the 737 MAX to market and into operation as quickly as possible.

Additionally, to assert a claim based on a fraudulent omission, plaintiffs must allege the existence of a special or fiduciary relationship that would raise a duty to speak. Al Maha

5

Trading & Contracting Holding Co. v. W.S. Darley & Co., 936 F. Supp 2d 933, 945-46 (N.D. Ill. 2013). They have failed to plausibly do so, alleging only that defendant's position in the commercial airline industry gives rise to a special or fiduciary duty to plaintiffs. This allegation is deficient. A seller of an aircraft does not share a confidential of fiduciary relationship with the purchaser, even if the seller possesses superior knowledge of the aircraft. See Go For It, Inc. v Aircraft Sales Corp., 2003 WL 21504600, at *2 (N.D. Ill. 2003). Because defendant did not have such a relationship with its customer, Southwest Airlines, it did not have such a relationship with its customers' employees.

Finally, plaintiffs' negligence and negligent misrepresentation claims are barred by Illinois' version of the economic loss doctrine. In Illinois it is well settled that a plaintiff cannot recover for solely economic loss under a negligence theory. Moorman Mfg. Co, v, Nat'l Tank Co., 435 N.E.2d 443, 453 (Ill. 1982). The rule "avoids the consequences of open-ended tort liability," by prohibiting "economic losses occasioned by diminished commercial expectations not coupled with injury to person or property." In re Chicago Flood Litig., 680 N.E.2d 265, 274 (Ill. 1997); In re Ill. Bell Switching Station Litig., 641 N.E.2d 440, 443 (Ill. 1994). There are exceptions: 1) where the plaintiff sustains personal injury or property damage resulting from a sudden or dangerous occurrence; 2) where the plaintiff's damages are proximately caused by a defendant's intentional false representation; and 3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. Trans States Airlines v. Pratt & Whitney Canada, Inc., 682 N.E.2d 45, 47-48 (Ill. 1997).

None of these exceptions apply to plaintiffs' negligence and negligent misrepresentation claims. First, plaintiffs do not allege that they sustained damages in connection with personal injury or property damage. Next, their negligence and negligent misrepresentation claims do not allege intentional misrepresentations. Finally, they do not allege and defendant in is not in the business of supplying information for the guidance of others in their business dealings. It is in the business of supplying a tangible product. See Jett8 Airlines, PL v. The Boeing Co., 2012 WL 5815728 (Ill. Cir. Ct. Nov. 2, 2012). Consequently, plaintiffs' negligence and negligent misrepresentations claims (Counts II and VI) fail to state plausible claims.

## CONCLUSION

For the reasons described above, defendant's motion to dismiss [Doc. 25] is granted.[2]

**ENTER:**

**DATE: January 11, 2021**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[2] In their response plaintiffs ask for leave to file an amended complaint should defendant's motion be granted. The court will not consider this request absent a properly filed motion accompanied by a proposed amended complaint.